**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOSE LUIS BELLO PAULINO, *individually and on behalf of others similarly situated,*

                       *Plaintiff*,

           -against-

S & P MINI MARKET CORP. (D/B/A S & P MINI MARKET CORP.) and AMANTINO VEGA ROSARIO,

                       *Defendants.*

**Case No. 1:22-cv-08724-VSB**

---

# DECLARATION OF RAMSHA ANSARI, ESQ.
## IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

CSM LEGAL, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiff*

Ramsha Ansari, an attorney duly admitted to practice in New York and in this Court, affirms on penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

## PRELIMINARY STATEMENT

1. I represent Plaintiff Jose Luis Bello Paulino in this lawsuit for unpaid wages, liquidated damages, and attorneys' fees under the Fair Labor Standards Act of 1938 ("FLSA") and New York Labor Law (the "NYLL") and regulations.

**2.** I submit this affirmation in support of Plaintiff's application for a default judgment against Defendants S & P Mini Market Corp. (D/B/A S & P Mini Market Corp.) and Amantino Vega Rosario pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2(b).

## PROCEDURAL HISTORY

3. Plaintiff commenced this action by filing the Complaint (and associated documents) on October 13, 2022. **Exhibit 1**.

4. This is an action for minimum and overtime wages, spread of hours, liquidated damages, interest, costs and attorneys' fees under the Fair Labor Standards Act (29 U.S.C. § 201 et seq., "the "FLSA") the New York Labor Law ("NYLL"), and associated rules and regulations. **Exhibit 1** at ¶ 9.

5. The Court has subject matter jurisdiction of the Plaintiff's federal claims pursuant to 29 U.S.C. § 201 *et seq.* (FLSA) and 28 U.S.C. § 1331 (federal question), and jurisdiction over the New York state law claims (such as the NYLL) under 28 U.S.C. § 1367(a) (supplemental jurisdiction). **Exhibit 1** at ¶¶ 11-12.

6. A summons and copy of the Complaint were properly served on S&P Mini Market Corp. (d/b/a S&P Mini Market Corp.) on December 8, 2022 by personally serving Amy Lesch, an authorized agent in the office of the Secretary of State of the State of New York. A copy of the

2

Affidavit of Service on defendant S&P Mini Market Corp. (d/b/a S&P Mini Market Corp.) is attached hereto as **Exhibit 2**.

7. A summons and copy of the Complaint were properly served on defendant Amantino Vega Rosario on December 8, 2022 by personally serving a managing agent. A copy of the Affidavit of Service on defendant Amantino Vega Rosario is attached hereto as **Exhibit 3**.

8. Defendants did not answer or otherwise respond to the Complaint.

9. Upon information and belief, S & P Mini Market Corp. is a corporation organized and existing under the laws of the State of New York.

10. Upon information and belief, Defendant Amantino Vega Rosario is neither an infant nor incompetent person nor in the active service of the United States military.

11. Plaintiff moved for entry of default on January 20, 2023. The Clerk of the Court then noted default against S & P Mini Market Corp. and Amantino Vega Rosario on January 23, 2023. The Clerk's certificates of default are attached hereto as **Exhibit 4**.

12. The declaration of Jose Luis Bello Paulino ("Plaintiff Dec"). in support of this motion for default judgment is annexed hereto as **Exhibit 5**.

## STATEMENT OF FACTS SUPPORTING ENTRY OF JUDGMENT

13. As alleged in the Complaint and as stated in Plaintiff's declaration, Defendants own(ed), operate(d), and control(led) a deli under the name "S & P Mini Market Corp." located at 270 E 165th St, Bronx, NY 10456 (Dkt. No. 1 at ¶¶ 2, 17; Plaintiff Dec. ¶ 4).

14. Plaintiff is a former employee of Defendants. (Dkt. No. 1 at ¶ 4; Plaintiff Dec. ¶ 3).

15. Defendants had the power to hire and fire Plaintiff, controlled Plaintiff's terms and conditions of employment, and determined the rate and method of Plaintiff's compensation. (Dkt. No. 1 at ¶ 18; Plaintiff Dec. ¶ 6).

16.     Defendants had employees who handled and used goods that were produced outside the State of New York and travelled through interstate commerce. (Dkt. No. 1 at ¶¶ 28, 33; Plaintiff Dec. ¶ 11;).

17.     In each year from 2016 to 2021, Defendants had a gross volume of sales that exceeded $500,000. (Dkt. No. 1 at ¶ 27; Plaintiff Dec. ¶ 10;).

### A.     Plaintiff Jose Luis Bello Paulino

18.     Plaintiff Jose Luis Bello Paulino was employed by Defendants as a deli worker from approximately 2012 until on or about January 2021. (Dkt. No. 1 at ¶¶ 31-32; Plaintiff Dec. ¶ 9).

19.     Plaintiff's work did not require discretion or independent judgment. (Dkt. No. 1 at ¶ 34; Plaintiff Dec. ¶ 12).

20.     Throughout his employment with Defendants, Plaintiff regularly worked in excess of 40 hours per week. (Dkt. No. 1 at ¶ 35; Plaintiff Dec. ¶ 13).

21.     From approximately October 2016 until on or about January 2021, Plaintiff worked from sometime between 6:00 a.m. to 6:30 a.m. until sometime between 4:00 p.m. to 6:00 p.m., 7 days a week (typically 66.5 to 84 hours per week). (Dkt. No. 1 at ¶ 36; Plaintiff Dec. ¶ 14)

22.     From approximately January 2020 until on or about January 2021, Plaintiff worked from sometime between 6:00 a.m. to 6:30 a.m. until sometime between 4:00 p.m. to 6:00 p.m., 6 days a week (typically 57 to 72 hours per week). (Dkt. No. 1 at ¶ 37; Plaintiff Dec. ¶ 15)

23.     Throughout his employment, Defendants paid Plaintiff his wages in cash. (Dkt. No. 1 at ¶ 38; Plaintiff Dec. ¶ 16).

24.     From approximately October 2016 until on or about January 2021, Defendants paid Plaintiff a fixed salary of $85 per day. (Dkt. No. 1 at ¶ 39; Plaintiff Dec. ¶ 17).

4

25. Plaintiff's pay did not vary even when he was required to stay later or work a longer day than his usual schedule. (Dkt. No. 1 at ¶ 40; Plaintiff Dec. ¶ 18).

26. For example, Defendants required Plaintiff to work an additional 30 minutes to 1 hour before his scheduled departure time every day, and did not pay him for the additional time he worked. (Dkt. No. 1 at ¶ 41; Plaintiff Dec. ¶ 19).

27. Plaintiff was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards that accurately reflected his actual hours worked. (Dkt. No. 1 at ¶ 43; Plaintiff Dec ¶ 20).

28. On a number of occasions, Defendants required Plaintiff to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay. (Dkt. No. 1 at ¶ 44; Plaintiff Dec ¶ 21).

29. No notification, either in the form of posted notices or other means, was ever given to Plaintiff regarding overtime and wages under the FLSA and NYLL. (Dkt. No. 1 at ¶ 45; Plaintiff Dec. ¶ 22).

30. Defendants did not provide Plaintiff an accurate statement of wages, as required by NYLL 195(3). (Dkt. No. 1 at ¶ 46; Plaintiff Dec. ¶ 23).

31. Defendants did not give any notice to Plaintiff, in English and in Spanish (Plaintiff's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1). (Dkt. No. 1 at ¶ 47; Plaintiff Dec. ¶ 24).

## ARGUMENT

**A.     Plaintiff is Entitled to Judgment by Default**

32. It is well settled that Defendants who fail to file an answer or otherwise move in respect to a complaint filed, are deemed to have admitted all of the well-pleaded allegations in the

complaint pertaining to liability. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006) ("Rule 55 tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party") (citation omitted).

33. Defendants have failed to file an answer or otherwise respond to the Complaint, despite the time to do so having expired. Thus, Plaintiff's allegations are unchallenged, and consequently the Complaint and declarations attached hereto establish Plaintiff's right to default judgment.

34. Upon entry of a default, the court may award damages based upon evidence submitted through affidavits and exhibits, or by an evidentiary hearing. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." *Id*. "Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'" *Id*. (quoting *Tamarin v. Adam Caterers, Inc*., 13 F.3d 51, 54 (2d Cir. 1993)).

35. Plaintiff maintains that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages. Based on the evidence Plaintiff has put forward, damages, including back pay, liquidated damages, prejudgment interest, should be awarded in the amount of $468,733.64, and attorneys' fees and costs should be awarded in the amount of $3,566.50.

B. **Plaintiff's Damages Calculation**

36. Annexed as **Exhibit 6** is a chart setting out the damages Plaintiff is entitled to recover.

37. In the damages chart, the Plaintiff's wage and hour damages (including overtime wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods". Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon the Plaintiff's affidavit, lists the number of hours worked per week in each period ("Hours Per Week in Period). The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period. Then there is a column for Paid Wages, the first column calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to Plaintiff (the "Credited Weekly Pay") for each period, then dividing that amount by the "Hours Per Week in Period"). The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculation later in the chart. The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiff's affidavit.

38. Calculations within the Chart – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiff should have been paid per week during each pay period. The actual formula used in this column is as follows: ((greater of minimum wage or calculated base pay) * Hours Per Week up to 40) + ((greater time and a half rate) * (Hours Per Week over forty, if any)).

39. The chart therefore automatically determines whether the effective calculated base rate of pay falls below the minimum wage, and if it does, it discards it. If it does not, it uses it for the subsequent calculations (as the Plaintiff is entitled to earn at least the minimum wage). The chart then automatically calculates what the hours should have been compensated at under the base rate of pay up to the first 40 hours of work per week, and then at time-and-a-half pay for any hours over 40. The Chart then subtracts the amount actually paid to Plaintiff (the "Credited Weekly Pay") and then derives the "Underpayment per Week." This number is then multiplied by the number of weeks in each period and derives the total damages due for unpaid minimum wages and

7

overtime for each period ("Unpaid Wages & OT"). The Chart then applies the liquidated damages provisions of the NYLL to the "Unpaid Wages and OT" automatically in the "Liq. Damages on Wages & OT" by 25% and 100% for any subsequent damages.

40. The unpaid spread of hours pay is derived by multiplying (the number of spread of hours days per week) * (the number of weeks per period) * (the minimum wage rate). Liquidated damages on unpaid spread of hours pay are 100% of the unpaid spread of hours pay.

41. The legal basis for the damages calculations within the chart are set out below.

**C. Back Pay**

42. Under the FLSA, employees must be paid at least $7.25 per hour, and one-and-one-half times their regular rate for each hour worked over forty (40) hours worked in a week. 29 U.S.C. § 207(a)(1). Thus, overtime work must be compensated at a rate of at least $10.88 per hour. From 2011 to 2013, the minimum wage under New York law was the same as under the FLSA.

43. The New York Minimum wage rate for businesses with eleven or more employees in New York City was $11.00 as of December 31, 2016; it further increased to $13.00 per hour as of December 31, 2017; it further increased to $15.00 per hour for as of December 31, 2018. New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week. 12 N.Y.C.R.R. § 146-1.4. The regular rate is the rate an employee is regularly paid for each work hour. 12 N.Y.C.R.R. § 146-3.5.

44. The onus is on the employer to maintain proper records of employees' hours worked, 29 U.S.C. § 211(c). "In a FLSA case, in the absence of rebuttal by [D]efendants, [P]laintiffs' recollection and estimates of hours worked are presumed to be correct." *Zeng Liu v.*

*Jen Chu Fashion Corp*, 2004 U.S. Dist. LEXIS 35, *8 (S.D.N.Y. 2004) (the court accepted the Plaintiffs' estimates of hours worked).

> An employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated[,] and if he produces sufficient evidence to show the amount and extent of that work by just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Id*. (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), and other cases).

45.     Employees must be paid one-and-one half times their regular rate for each hour worked over forty (40) hours worked in a week. 29 U.S.C. § 207(a)(1). New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week. 12 N.Y.C.R.R. § 142-2.2. The regular rate is the rate an employee is regularly paid for each work hour. 12 N.Y.C.R.R. § 146-3.5.

46.     Under the New York Hospitality Industry Wage Order, the regular rate for a restaurant employee who is not paid on an hourly basis is determined by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5.

47.     Accordingly, to determine the Plaintiff's unpaid wages, Plaintiff's regular rate is multiplied by 1.5 to determine the overtime rate the Plaintiff should have received.

48.     Here, Plaintiff was not paid minimum wage or overtime compensation at the lawful rate. Rather, Plaintiff received a daily fixed salary throughout his entire employment without

taking into account his hours worked or his hours worked over 40 hours into account. See **Exhibit 6.**

49. Plaintiff's back wages are calculated by first determining his lawful weekly wages had he been paid at the full applicable minimum wage and proper overtime rate (his "lawful weekly pay") and then subtracting the amount he was actually paid (his "credited weekly pay"). *See* **Ex. 6.**

50. Plaintiff is thus owed a total of $171,153.38 in unpaid minimum wage and overtime compensation. See **Exhibit 6**.

### D. Three Year Statute of Limitations

51. Under the FLSA, when the underpayment by the employer is willful, the limitations period increases from two (2) to three (3) years. 29 U.S.C. § 255(a).

52. Willfulness under the FLSA means the employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute," *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Damassia v. Duane Reade, Inc.*, 2005 U.S. Dist. LEXIS 9768 at *5 (S.D.N.Y. May 20, 2005) (willfulness was properly pleaded by alleging, inter alia, that the employer was "aware of the existence of the FLSA and its overtime requirements."). Willfulness is also established when an employer fails to investigate whether its compensation policy was legal. See *Hardrick v. Airway Freights Systems, Inc.*, 63 F. Supp. 2d 898, 904 (N.D.Ill. 1999); *Alvarez v. IBP, Inc.,* 339 F.3d 894, 909 (9th Cir. 2003), aff'd, 126 S.Ct. 514 (2005) (upholding the three-year statute of limitations because employer was on notice of FLSA requirements but "took no affirmative action to assure compliance" with them).

53. In the present matter, Defendants were aware, or should have been aware, of the existence of the FLSA and its overtime requirements. However, the Defaulting Defendants knew

or disregarded the fact that their conduct was prohibited by the FLSA. Furthermore, even if the Defaulting Defendants did not know of the FLSA, the Defendants' actions are still willful because the Defaulting Defendants failed to investigate whether their compensation policy was legal. See *Hardrick*, 63 F. Supp. 2d at 904.

54. Moreover, the Defendants failed to post the required information concerning the minimum wage and overtime laws.

55. This deliberate decision to disregard both FLSA and New York law, as well as Defendants' failure to take any affirmative step towards compliance, amount to willfulness for purposes of the FLSA and New York law. *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005)("A failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages") (internal quotations omitted).

56. As Plaintiff can establish that Defendants' violation of the FLSA was willful, he is entitled to a three-year limitations period under the FLSA, i.e., starting from October 23, 2019, three years before the complaint was filed. See, e.g., Decraene v. Neuhaus (U.S.A.), Inc., 2005 U.S. Dist. LEXIS 10836 at *23-*24 (S.D.N.Y. 2005). Furthermore, under the New York Labor Law and regulations, the limitations period is six years, regardless of willfulness. N.Y. Labor Law § 663(3). Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA. See Godlewska v. Human Dev. Assoc., Inc., 2006 U.S. Dist. LEXIS 30519 at *12 (E.D.N.Y. May 18, 2006). Therefore, back pay under the New York Labor Law should be calculated from the start of Plaintiff's employment, which was less than six years from the filing date.

11

### E. Spread of Hours Pay

57. Plaintiff is entitled to "spread-of-hours" pay under the New York Hospitality Industry Wage Order. Employers are required to pay workers an additional hour of pay, at the basic minimum hourly rate, when their workday is more than ten (10) hours. 12 NYCRR § 146-1.6; *Angamarca v. Pita Grill 7 Inc.*, 2012 U.S. Dist. LEXIS 108322, at *16-17 (S.D.N.Y. Aug. 2, 2012).

58. Plaintiff worked more than ten hours per day seven times per week throughout his employment with Defendants, and from approximately October 1, 2016 to January 15, 2020, and six times per week from approximately January 16, 2020 to January 31, 2021.

59. Accordingly, Plaintiff is entitled to $21,723.00 in unpaid spread of hours pay. See **Exhibit 6**.

### F. Wage Notice and Statement Violations

60. Defendant never provided Plaintiff with annual notices of their wages, or a wage statement with each payment of wages, as required by NYLL §§ 195(1), 195(3).

61. Therefore, in accordance with NYLL § 198, Plaintiff is entitled to $5,000 for Defendants' violations of NYLL § 195(1) and $5,000 for Defendants' violations of NYLL § 195(3). In total, Plaintiff is entitled to $10,000 for violation of the wage notice and wage statement provisions.

### G. Liquidated Damages

62. Under the NYLL, "an employee is also entitled to liquidated damages 'equal to one hundred percent of the total of such underpayments found to be due,' unless the employer proves a good faith basis for believing he or she was in compliance with the law." *Jiaren Wei v. Lingtou*

12

*Zhengs Corp.*, 2014 U.S. Dist. LEXIS 182325, *23 (E.D.N.Y. Dec. 3, 2014) (quoting NYLL § 663(1)).

63. Given the uncontroverted evidence of Defendants' lack of good faith Plaintiff is entitled by statute to liquidated damages under the New York Labor Law, computed at 100% for any unpaid overtime wages.

64. Accordingly, Plaintiff is entitled to liquidated damages of 100% of their unpaid minimum wages, overtime, and spread of hours under the NYLL.

65. Plaintiffs are entitled to liquidated damages of $171,153.38 for unpaid minimum wage and overtime, and $21,723.00 for unpaid spread of hours. See **Exhibit 6.**

### H. Prejudgment Interest

66. New York law generally provides for an award of prejudgment interest on a variety of claims, including the claims for unpaid wages asserted here, at an annual rate of nine percent. Where, as here, damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date. A court has discretion to choose a reasonable accrual date. Courts often select the median date between the earliest ascertainable date the action arose and the date the plaintiff filed suit.

67. Under N.Y. C.P.L.R. § 5004, prejudgment interest runs at the rate of nine percent (9%) per annum simple interest. *See Perero v. Food Jungle, Inc.*, No. 05 Civ 4347, 2006 WL 2708055, at *8 (E.D.N.Y. Aug. 7, 2006). As to the date from which interest is to be calculated, the statute states that "[w]here . . . damages were incurred at various times, interest [may] be computed . . . upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). When claims that are reduced to judgment have arisen on different dates, the Court may compute prejudgment interest from an appropriate single median date. *See Perero*, 2006 WL

2708055, at *8; *Koylum, Inc. v. Peksen Realty Corp.*, 357 F. Supp. 2d 593, 597 (E.D.N.Y. 2005), *aff'd in pertinent part and vacated in part*, 160 Fed. Appx. 91 (2d Cir. 2005). Thus prejudgment interest on Plaintiffs' back pay awards should be computed from the median of each relevant period to the date of judgment.

68. The median date for Plaintiff is calculated in the damages chart (**Exhibit 6**). In total, Plaintiff is entitled to $ 64,776.04 in prejudgment interest on wages and overtime, and $8,204.85 in prejudgment interest on spread of hours pay.

I. **Attorneys' Fees and Costs**

69. The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); NYLL § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").

70. Plaintiff incurred costs and attorneys' fees in pursuing this action, and seek an award of reasonable attorney's fees and costs.

71. The attorneys' fees and costs total $3,566.50, including a filing fee of $402.00 and fees associated with serving the Defendants with the summons and complaint.

72. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 186 (2d Cir. 2008). Prior to *Arbor Hill*, this amount was known as the "lodestar" amount, which the Second Circuit has suggested be known going forward as the "presumptively reasonable fee." *Id.* at 183. It is

14

"well established that 'any attorney . . . who applied for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specifying, for each attorney, the date, the hours expended, and the nature of the work done.'" *Cesario v. BNI Constr., Inc.*, 2008 U.S. Dist. LEXIS 103155, at *19 (S.D.N.Y. Dec. 15, 2008) (*quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). While reviewing the records, the Court should make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir.1994). The inquiry should be focused on "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted). However, in considering the records, the Court should not "engage in 'an ex post facto determination of whether attorney hours were necessary to the relief obtained.'" *Cesario,* 2008 U.S. Dist. LEXIS 103155, at *20 (*quoting Grant*, 973 F.2d at 99). While the Court may exclude hours from the calculation that are "excessive, redundant, or otherwise unnecessary," *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983), "[t]here is no precise rule or formula for making these determinations," *Id*. at 436.

73.    The Court should find that all attorney hours spent on this case were reasonable under the circumstances and include every hour expended in its calculation of the reasonable fee. With respect to figuring a reasonable hourly rate, the Second Circuit has held that the term means "what a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3dat 184. The rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (citation omitted).  In considering the appropriate rate, the Court

15

may also use its own knowledge of the relevant market. *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96-97 (2d Cir. 2006).

74. A breakdown of attorneys' fees and costs incurred in filing the Complaint and seeking default, in the form of this firm's standard billing sheet is attached hereto as **Exhibit 7**.

75. A brief biography of each attorney who performed billed work in this matter is as follows:

    i. Catalina Sojo ("CS"), graduated with a J.D. equivalent degree from Pontificia Universidad Javeriana in Bogota, Colombia, in 2017. She received a Master of Laws degree (LL.M.) from Cornell University School of Law in 2019. Prior to joining Michael Faillace & Associates in June 2020, she focused her practice in intellectual property litigation and enforcement, having worked as an associate at Baker McKenzie and as in-house counsel at ViacomCBS. Her work is billed at a rate of $350 per hour.

    ii. Frank Palermo ("FP"), an associate attorney of CSM Legal, PC, graduated with a J.D. from Pennsylvania State University – Dickinson School of Law in 2017. Prior to joining CSM Legal, PC in March 2022, he focused his practice in personal injury and construction accidents as an associate at Jonathan D'Agostino & Associates. His work is billed at a rate of $350 per hour.

    iii. Paralegals ("PL" and "PU") at CSM Legal, P.C. are billed at a rate of $125 per hour, well within a range of rates for paralegal work that courts have routinely approved. See, e.g., Cortes v. New Creators, Inc., 2016 U.S. Dist. LEXIS 79757, *19-20 (S.D.N.Y. June 20, 2016); see also Guallpa v. NY Pro Signs Inc., 2014 U.S. Dist. LEXIS 77033, *29 (S.D.N.Y. May 27, 2014).

## **CONCLUSION**

76. Based on the above information and exhibits, Plaintiff asserts the record supports a judgment against the Defendants in favor of Plaintiff in the amount of $468,733.64 for unpaid wages, overtime, spread of hours, liquidated damages, prejudgment interest and other claims.

Prejudgment interest continues to run and should ultimately be computed through the date judgment is entered.

77. Additionally, Plaintiff is entitled to $3,566.50 in attorneys' fees and costs.

78. No inquest is necessary when, as in the present case, the Court has the proper measure of damages and evidence submitted by the Plaintiff that allows damages to be calculated with reasonable certainty.

79. No part of the judgment sought has been paid.

80. Sufficient definitive information and documentation is provided such that the amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by Plaintiff's declaration accompanying these motion papers.

81. Plaintiff also makes a request for interest on the principal amount of the judgment not to exceed 9%, as stated above and in the damages calculations.

82. Plaintiff also requests that the judgment provides that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

83. A proposed form of judgment is attached as **Exhibit 8**.

84. For the reasons stated above and in the accompanying declarations and exhibits, the Plaintiff's motion for a default judgment should be granted.

Dated: New York, New York
       February 20, 2023

                                          CSM LEGAL, P.C.

                                          */s/Ramsha Ansari*
                                          Ramsha Ansari, Esq.
                                          One Grand Central Place

60 East 42nd Street, Suite 4510<br>
New York, NY 10165<br>
Tel: (212) 317-1200<br>
Fax: (212) 317-1620<br>
Email: ramsha@csm-legal.com<br>
*Attorneys for Plaintiff*