UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

JOSE LUIS BELLO PAULINO, :

Plaintiff, : OPINION AND ORDER

-v.- :

22 Civ. 8724 (GWG)

S & P MINI MARKET CORP. et al., :

Defendants. :

---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge:**

Plaintiff Jose Luis Bello Paulino filed this action on October 13, 2022, raising claims against S & P Mini Market Corp. ("S & P Mini Market") and Amantino Vega Rosario under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and New York Labor Law §§ 190 et seq. and 650 et seq. ("NYLL"). See Complaint, filed October 13, 2022 (Docket # 1) ("Compl."). During the jury deliberations of a trial adjudicating the claims against Rosario, Paulino and Rosario announced to the Court that they had reached an agreement to settle the case.[1] Before the Court is an unopposed motion by Paulino to enforce this purported settlement agreement and seeking approval of the settlement under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).[2] For the following reasons, the Court grants Paulino's motion to enforce the settlement agreement and approves the settlement.

---

[1] Trial Transcript, dated January 15, 2025 (Docket # 99) (containing pages 1-100) & dated January 16, 2025 (Docket # 101) (containing pages 101-37) (together, "Tr.").

[2] Notice of Motion, filed February 28, 2025 (Docket # 106) ("Mot."); Memorandum in Support of Motion to Vacate, filed February 28, 2025 (Docket # 107) ("Mem."); Proposed Order, filed February 28, 2025 (Docket # 108).

# I. BACKGROUND

## A. Procedural Background

On October 13, 2022, Paulino filed this action against S & P Mini Market and Rosario, alleging minimum wage and overtime compensation violations under federal and state law. See Compl. While both defendants were represented for a period of time, on July 10, 2024, the Court deemed S & P Mini Market to be in default because the Court had approved the motion of its attorney to withdraw and as a corporate entity S & P Mini Market could not appear without counsel. See Order, filed July 10, 2024 (Docket # 62).

On January 15, 2025, a jury trial commenced on Paulino's claims against Rosario. See Tr. 1. As further described below, after both sides rested and the jury began deliberations, the parties announced they had reached a settlement agreement. Id. 122:18-19. The Court stated that it intended to take the jury verdict regardless of the settlement. Id. 122-23. The jury later delivered a verdict finding that Paulino had failed to prove his claims against Rosario. Id. 130:19-134:24.

On February 28, 2025, Paulino filed the instant motion to "vacate" the jury verdict and enforce the settlement agreement. See Mot. On March 3, 2025, Rosario's pro bono counsel announced that they would "not be representing defendant . . . Rosario any further." Order, filed March 12, 2025 (Docket # 114). Since March 3, 2025, Rosario has proceeded without counsel.

Rosario has not filed an opposition to Paulino's motion to enforce the settlement agreement. The Court specifically warned Rosario that if he failed to file any opposition, the motion would be treated as unopposed. Order, filed March 18, 2025 (Docket # 116).

B. Factual Background

During jury deliberations, Daniel A. Schnapp, counsel for Rosario, announced that he "believe[d] the parties have reached a settlement." Tr. 122:18-19. Before the parties went any further, the Court explained that

> I can't have any settlement where there is any danger of someone coming back and saying it was unenforceable or this or that or they didn't pay on it and, therefore, somehow a trial has to happen again. Whatever the settlement is, the parties have to agree that, no matter what happens, it will not be a remedy to revive this case and have a trial. That cannot possibly be a remedy. I'm almost tempted to say, we are going to take the verdict and the settlement will supersede the verdict, just so that I don't have to ever worry about this again. . . . I think I want to take the jury verdict, regardless. If you want to give me a settlement that says regardless of the jury verdict, the settlement will supersede the jury verdict and you're asking me to enter a judgment not on the jury verdict but on the settlement, regardless of what it is, if that's a term — that's going to be a baseline precondition for me to hear from you right now. Talk to each other and see if you have any problem with that.

Id. 122:20-123:18. Schnapp responded that "[t]he parties agree." Id. 123:19. The Court went on to explain that the FLSA claims

> can't be dismissed without Cheeks approval anyway. Whatever you do has to be presented to me as part of a Cheeks application. Otherwise, the settlement can't go into effect. I don't think you can just — if it was any other type of case, you could just stand up and say, the parties have dismissed the case, here is a stipulation of dismissal, sign it, and then that would be the end of it. I wouldn't take the jury verdict. It would all be over. The problem is Cheeks. That's the problem. I think I have to do a Cheeks approval.

Id. 124:3-12. The Court further explained that

> you need to present to me the terms of an agreement that is enforceable in full, and then you are going to have to go through the Cheeks factors, I can remind you of what they are, and then I'll have to decide whether I'm approving the settlement. I think you have to put the terms of the settlement on the record for two reasons. One is, it wouldn't be enforceable otherwise and, two, I have to hear them in order to do Cheeks approval.

Id. 124:22-125:5. Schnapp responded: "The terms of the settlement are $20,000 to be paid within 30 days. I will leave it to the plaintiff to add anything else, but that is my understanding of the settlement." Id. 125:6-9. Plaintiff's counsel, Mark A. Marino, added: "That's my understanding of the settlement as well." Id. 125:10-11.

After the Court inquired what would happen if there was a failure to pay within 30 days, see id. 125:12-13, Marino responded that "all the money would come due upon a breach." Id. 125:24-25. The parties appeared to disagree as to how any failure to pay would be enforced but ultimately Schnapp explained, without objection, that no judgment would be entered in the federal case but rather "that in the event that our client [sic] is not paid, he [referring to Paulino] will need to sue him [referring to Rosario] in state court for breach of contract." Id. 126:23-25.

The Court clarified that no judgment would be entered. Id. 127:1-2. Schnapp affirmed. Id. 127:3. The Court then stated: "The case is being dismissed on a promise that the defendant will pay $20,000 to plaintiff within 30 days. No other terms to this proposal." Id. 127:7-9. Both Schnapp and Marino said "correct." Id. 127:10-12. The Court then stated:

> So you understand that's the only term. There is no judgment that's going to be entered. I am going to enter an order of dismissal on the grounds that the parties settled.
>
> And there is one other term that's very important, which is that this settlement will survive the return of the verdict that I intend to take from this jury, assuming I decide to take it and not to stop it at some point, which I doubt I would.

Id. 127:13-21. The Court asked Marino and Schnapp whether this was also an agreed-upon term. Id. 127:22-25. Both said "yes." Id. Moments later, Schnapp reiterated that the parties "ha[d] a settlement." Id. 129:17.

The Court instructed the parties that they needed to submit a written Cheeks application. Id. 128:1-129:22. The defendant suggested that they could do an oral application (repeating

"[w]e have a settlement"). Id. 129:13-17. The Court said that would be acceptable, but it needed to know what the costs and attorney's fees were. Id. 129:18-22. The Court then recessed. Id. 129:23.

About 15 minutes later, the jury delivered a note announcing that it had reached a verdict. Id. 129:24-25. The Court took the jury's verdict, which found that Paulino had failed to prove any of his claims against Rosario. Id. 130:6-134:24.

After the jury was discharged, Schnapp stated to the Court: "We . . . don't feel that the settlement has been agreed to and, therefore, our position is that the jury verdict should stand." Id. 136:1-3. Marino objected, stating that because the parties had "put the settlement terms on the record, . . . there is a settlement." Id. 136:8-9. After noting that it had not given Cheeks approval, the Court stated that it would not address the issue:

> Here is what I am going to do. We are not doing any of this orally. I will enter judgment on the verdict, and you are absolutely free to move to vacate it on the ground that there had been a settlement and, somehow, that superseded it. That's up to you.

Id. 136:10-15. In an order issued later that day, however, the Court stated as follows

> After the Court took the verdict and discharged the jury, Rosario asserted that he had not entered into a binding settlement. The Court said that it would be entering a judgment on the verdict and that plaintiff could raise the issue of settlement by moving to vacate the judgment.
>
> The Court has since realized that no judgment will be entered in this case until the claims against S&P Mini Market Co. are adjudicated. The Court is thus issuing this Order to make clear that the Court leaves it to plaintiff to utilize whatever procedure he believes proper to raise the issue of settlement — whether it is a motion to enforce the purported settlement or some other vehicle. The Court takes no position at this time as to the proper procedure for raising this issue.
>
> If the Court determines there was a settlement, the Court reminds plaintiff that settlement would still have to be approved under Cheeks. While the Court is not requiring plaintiff to do so, the Court would prefer as a matter of efficiency that

> any motion for approval under Cheeks be made at the time plaintiff makes any motion regarding the purported settlement.

Order, filed January 16, 2025 (Docket # 98) at 3.

## II. GOVERNING LAW

Paulino has styled his motion as a "Motion to Vacate Jury Verdict and Enforce Settlement." Mot. at *1. Because no party has suggested that there is any deficiency in the jury verdict itself, and because the Court discerns no deficiency, we believe that plaintiff's application is best viewed as a motion to enforce the settlement, not to vacate the jury verdict. "A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." BCM Dev., LLC v. Oprandy, 490 F. App'x 409 (2d Cir. 2013) (citing Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974)). In appropriate circumstances, a court "retain[s] authority to clarify subsequently the settlement and to impose clarifying terms," Manning v. N.Y. Univ., 299 F.3d 156, 163 (2d Cir. 2002); accord Pullman v. Alpha Media Pub., Inc., 2014 WL 5043319, at *9 (S.D.N.Y. Mar. 14, 2014), adopted as modified, 2014 WL 5042250 (S.D.N.Y. Sept. 10, 2014), aff'd, Pullman v. Alpha Media Pub., Inc., 624 F. App'x 774 (2d Cir. 2015), though it does not have authority to "expand[]" the agreement. See Manning, 299 F.3d at 163.

On the question of whether a settlement has been reached, "[a] settlement agreement is a contract that is interpreted according to general principles of contract law." Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007). The Second Circuit has not yet determined "whether federal or state law should govern a motion to enforce a settlement" in a federal action. Acun v. Merrill Lynch Pierce Fenner & Smith, Inc., 852 F. App'x 552, 553 n.1 (2d Cir. 2021). Nonetheless, "there is no material difference between New York contract law and federal common law

regarding the enforceability of oral settlement agreements." Id. (citing Powell, 497 F.3d at 129 n.1).

"It is beyond question that verbal, in-court settlement agreements may be binding and enforceable, although the agreement was never reduced to writing." Samuel v. Bd. of Educ., 2015 WL 10791896, at *3 (E.D.N.Y. Aug. 11, 2015). But if "either party communicates an intent not to be bound until he achieves a fully executed document," the oral settlement agreement cannot bind the parties. Winston v. Mediafare Ent. Corp., 777 F.2d 78, 80 (2d Cir. 1985) (citing R.G. Group v. Horn & Hardart Co., 751 F.2d 69, 74 (2d Cir. 1984)).

"An oral agreement is enforceable where the parties manifested an intention to be bound by it." Acun, 852 F. App'x at 553-54 (citing Powell, 497 F.3d at 129-30). "Generally, a 'settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing.'" Id. at 554 (citing Powell, 497 F.3d at 129). "The agreement need not be reduced to writing if it is entered into voluntarily on the record in open court." Id. (citing Powell, 497 F.3d at 129).

The question of whether the parties intended to be bound "is a question of fact, to be determined by examination of the totality of the circumstances." Ciaramella v. Reader's Dig. Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997). In determining whether the parties intended to be bound, the Second Circuit has pointed to four factors:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Winston, 777 F.2d at 80; accord Acun, 852 F. App'x at 554. These factors are commonly referred to as the "Winston factors." "No single factor is decisive, but each provides significant guidance." Ciaramella, 131 F.3d at 323; accord Acun, 852 F. App'x at 554.

III. DISCUSSION

Paulino has moved to enforce the purported settlement and to obtain approval under Cheeks. See Mot. At *1; Mem. However, Paulino's accompanying memorandum of law moves to vacate under Fed. R. Civ. P. 60(b)(6). See Mem. at *2. The Court, however, had already explained "that Fed. R. Civ. P. 60 does not apply because no judgment or order has been entered" and that instead "the proper vehicle [to effectuate the settlement] appears to be a motion to enforce the purported settlement." Order, dated January 30, 2025 (Docket # 105). Accordingly, this opinion will assess (1) whether the record reflects that the settlement is enforceable; and (2) whether the settlement agreement should be approved pursuant to Cheeks, 796 F.3d 199. We address these issues in turn.[3]

A. Whether the Settlement is Enforceable

As noted, the issue of whether the settlement is enforceable turns on the question of whether the parties intended to be bound by the oral agreement to settle. We thus apply the Winston factors.

1. Express Reservation

"The first Winston factor — whether the parties expressly reserved the right not to be bound absent a writing (which encompasses consideration of whatever manifestations the parties

[3] The Court notes that no party has raised the question of whether Rosario's attorney had authority to settle this case. Under case law, courts may "presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so," absent proof to the contrary. In re Artha Mgmt., Inc., 91 F.3d 326, 329 (2d Cir. 1996).

have made to one another on the subject of intent to be bound on reaching an oral agreement) — 'is frequently the most important.'" Acun, 852 F. App'x at 554 (citing Brown v. Cara, 420 F.3d 148, 154 (2d Cir. 2005)). Here, neither side expressly stated that a writing was required to bind them. Additionally, the parties spent some time articulating the exact terms of the agreement on the record. Tr. 122-127. Also, when the Court suggested that the parties may wish to submit a written, rather than an oral, Cheeks application, defendant's attorney stated his preference for an oral Cheeks submission and repeated that the parties "have a settlement." Id. at 129:8-18. It was obvious from the parties' statements that the parties did not expect to sign a written settlement agreement.

Accordingly, the first Winston factor weighs in Paulino's favor.

2. Partial Performance

"Partial performance favors enforcement when 'one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement.'" Acun, 852 F. App'x at 554 (citing Ciaramella, 131 F.3d at 325).

Here, there was nothing for either party needed to do in order to perform under the settlement other than for Rosario to make the $20,000 payment. The lack of partial performance here was due entirely to Rosario's efforts to argue that there had been no settlement — a position that was obviously precipitated by the Court taking the jury verdict. Thus, we view this factor as neutral.

3. Agreement Over Material Terms

Under the third Winston factor, courts assess whether the oral agreement covered the material terms. See Acun, 852 F. App'x at 555. This factor is satisfied if there is "literally

nothing left to negotiate." Attestor Value Master Fund v. Republic of Argentina, 940 F.3d 825, 831 (2d Cir. 2019); accord Acun, 852 F. App'x at 555.

Here, this factor favors enforcement as the only relief sought by plaintiff in this case was the payment of money and the settlement provided for exactly that. The agreement even specified the deadline by which the money was to be paid. There are no other material terms that needed to be negotiated. Additionally, here, "the Court recited the material terms of the settlement on the record. Both parties had an opportunity to be heard and to assent, reject, or seek modification of those terms. Neither party showed confusion or reservation with respect to the recited terms." Conway v. Healthfirst Inc., 2024 WL 5359849, at *5 (S.D.N.Y. Aug. 8, 2024), adopted, 2025 WL 307458 (S.D.N.Y. Jan. 27, 2025). Thus, "this factor weighs in favor of enforcement." Id.; accord Acun v, 852 F. App'x at 555 (finding that this factor weighs in favor of enforcement when both parties confirmed the judge's recitation of the oral agreement's material terms, failed to object, and answered affirmatively when asked whether they understood and accepted the agreements terms).

4. Form of Agreement

Under the fourth Winston factor, a court "considers whether the agreement is of a type that is usually expressed in a written instrument." Acun, 852 F. App'x at 556. Recently, the Second Circuit explained that what "Winston had in mind in this reference to a writing . . . is a written instrument whose status as a binding contract has been acknowledged either by signature or by express oral acceptance." Id. An "in-court announcement of the Oral Agreement's material terms" to which the parties assent on the record, is "akin to that of a memorializing writing." Id.; accord Ciaramella, 131 F.3d at 326 ("Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court.").

Here, the settlement agreement was made on the record in open court with the explicit assent of both parties. Additionally, "the terms of the settlement here are also not particularly complex," Conway, 2024 WL 5359849, at *5 (citation and punctuation omitted), thus suggesting that that the parties did not contemplate a written contract, id.

Accordingly, this factor weighs in favor of enforcing the settlement agreement.

5. Conclusion

The Winston factors easily weigh in favor of enforcing the agreement. Where, as here, "the parties did not reserve their rights not to be bound by the oral settlement, left no material terms open for further negotiation, and reached their agreement on the record in open court," the Second Circuit has found that "the parties intended to be bound by the oral agreement." Doe v. Kogut, 759 Fed. Appx. 77, 81 (2d Cir. 2019). For similar reasons, we conclude that the parties intended to be bound by the settlement agreement as stated on the record in court on January 16, 2025.

B. Whether the Settlement of the FLSA Claim Should be Approved under *Cheeks*

The Second Circuit has held that the settlement of FLSA claims "require[s] the approval of the district court or the [Department of Labor] to take effect." Cheeks, 796 F.3d at 206. While Paulino suggests that no Cheeks review is required based on the fact that only New York Labor Law claims were presented to the jury, Mem. at *5, his argument is difficult to follow and fails to recognize the fact that the Court ultimately did not dismiss the FLSA claims. See Tr. 103. We thus address the Cheeks factors to determine whether the agreement is "fair and reasonable." Cheeks, 796 F.3d at 201 (citation omitted).

In determining whether a settlement is "fair and reasonable" under Cheeks, courts have considered the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Fisher v. SD Protection, Inc., 948 F.3d 593, 600 (2d Cir. 2020) (quoting Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)).

As to the "range of possible recovery," Fisher, 948 F.3d at 600, we view this factor as invoking a comparison of the amount the plaintiffs had a realistic chance of obtaining in relation to what the plaintiffs actually obtained through the settlement. See Puerto v. Happy Life Home Health Agency Inc., 704 F. Supp. 3d 403, 405 (S.D.N.Y. 2023). This factor is frequently considered alongside the third factor, "the seriousness of the litigation risks faced by the parties," Fisher, 948 F.3d at 600. See Wynne v. City of N.Y., 2024 WL 5049770, at *2 (S.D.N.Y. Dec. 10, 2024) (considering "whether there were good reasons to settle for a recovery that is less . . . than plaintiffs hoped to obtain at trial," such as the certainty "that plaintiffs would be able to prove their factual contentions" as part of the analysis of the first Fisher factor).

Paulino "alleges that he was entitled to a total of approximately $160,000 in unpaid minimum and overtime wage damages and approximately $460,000 if he recovered fully on all his claims, including liquidated damages and prejudgment interest." Mem. at *6; see Damages Chart, filed February 28, 2025, annexed as Ex. 5 to Declaration of Mark Marino, Esq. in Support of Plaintiff's Motion for Default Judgment, filed February 28, 2025 (Docket # 110) (Docket # 110-5).[4] But these damages calculations included damages from certain claims, such as the

[4] Paulino references a damages chart "[a]ttached as Exhibit B." Mem. at *6. However, Exhibit B contains a retainer agreement. See Retainer and Legal Representation Agreement, dated August 15, 2022, annexed as Ex. B to Mem. (Docket # 107-2) ("Retainer Agreement").

wage notice and wage statement claims, which previously had been dismissed. See, e.g., Joint Pretrial Order, filed January 14, 2025 (Docket # 95), at 8 (dismissing wage notice and wage statement claims for lack of subject-matter jurisdiction). In fact, Paulino only sought damages of $410,376.03 at trial. See id. at 4-5.

The $20,000 settlement is approximately 4.87% of Paulino's "best case scenario" damages. While this may seem a small percentage, there was good reason to settle for this amount given the uncertainty as to Paulino's ability to prove his claims. Shortly before the parties entered into the settlement, the jury sent a note that spelled certain doom for the plaintiff's case. The note referred to the questions on the verdict sheet that asked the jury to determine how many hours and days Paulino had worked. The note read:

> We, the jury, are requesting more instructions on completing the charts in question 2.
>
> 1. Do we have the option to leave the charts in question 2 blank?
>
> 2. Hypothetically, if we do not believe any numbers were proven, what number should we enter?
>
> 3. Do we have the option to enter "n/a" instead of zero?

Tr. 117: 9-16. In other words, it was obvious at this point that the jury was contemplating finding that plaintiff had failed to prove that he had worked any hours for Rosario. That plaintiff was able to still convince the defendant to pay $20,000 in settlement notwithstanding this jury note represents an outstandingly favorable result.

As to the second factor, given that the settlement was agreed upon during jury deliberations, the settlement agreement did little to enable "the parties to avoid anticipated

---

Because a damages chart is annexed to Paulino's motion for a default judgment as to defendant S & P Mini Market, we reference that chart instead.

burdens and expenses in establishing their respective claims and defenses." Fisher, 948 F.3d at 600. It did, however, obviate any possibility of having to engage in appellate litigation. Thus, this factor is either neutral or favors approval.

Factors four and five support the conclusion that the proposed settlement amount is reasonable. Plaintiff was represented by counsel, the settlement agreement was discussed in open court in front of the parties, and there are no indicia of fraud or collusion. Counsel was engaged to represent plaintiff on a contingency fee basis, see Retainer Agreement at *2, which in and of itself provided counsel with a strong incentive to settle the case for the maximum recovery possible, see Almanzar v. Silver Star Properties Corp., 699 F. Supp. 3d 253, 256 (S.D.N.Y. 2023).

As a result, we find the amount of the settlement to be reasonable.

The fairness review required by Cheeks "extends to the reasonableness of attorneys' fees and costs." Fisher, 948 F.3d at 606 (citing Cheeks, 796 F.3d at 206); accord Gurung v. White Way Threading LLC, 226 F. Supp. 3d 226, 229-30 (S.D.N.Y. 2016) ("In an FLSA case, the Court must independently ascertain the reasonableness of the fee request."). Here, Paulino's counsel requests reimbursement of $8,657.20 in expenses, see Expenses and Services, dated February 28, 2025, annexed as Ex. C to Mem. (Docket # 107-3) ("Expenses and Services"), at 3, and $3,658.35 in attorneys' fees, see Mem. at *7, which represents about 32% of the amount recovered exclusive of costs. These requested attorney's fees are less than the 40% contingency fee agreed-upon by Paulino in the retainer agreement. See Retainer Agreement at *2.

As we have previously written, we will not compare the approximately one-third contingency payment to the actual hours expended by counsel — commonly called a "lodestar cross check" — to determine the reasonableness of the fee as many other courts do. See Puerto,

704 F. Supp. 3d at 406; Wynne, 2024 WL 5049770, at *3. Instead, we judge whether the contingency arrangement itself is "reasonable" at the time it was made. See Puerto, 704 F. Supp. 3d at 406. Here, we find no acts of overreaching or any deceptive conduct in the making of the contingency arrangement --- as long as the attorneys limit themselves to a one-third recovery. See id. at 407.

Finally, as to the expenses, an attorney can recover "those reasonable out-of-pocket expenses incurred . . . and ordinarily charged to their clients." Leblanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (internal citation and quotation marks omitted). Here, plaintiff's attorneys seek $8,657.20 in litigation expenses, including the filing fee, translation services, and cost of service. See Expenses and Services at 3. "Courts typically allow counsel to recover their reasonable out-of-pocket expenses." Viafara v. Mciz Corp., 2014 WL 1777438, at *15 (S.D.N.Y. May 1, 2014). While the costs here are unusually high for an FLSA settlement, the lion's share of expenses are attributable to the need to hire interpreters for trial and it is appropriate to allow counsel to be reimbursed for such costs. See, e.g., Shin v. Party Well Rest & Oriental Bakery, Inc., 2023 WL 8701337, at *10 (E.D.N.Y. Dec. 15, 2023) (approving interpreter expenses), adopted, 2024 WL 1327420 (E.D.N.Y. Mar. 28, 2024), aff'd 2025 WL 783737 (2d Cir. Mar. 12, 2025). Accordingly, the expenses sought by Paulino's attorneys of $8,657.20 are reasonable.

## IV. CONCLUSION

For the reasons started above, Paulino's motion to enforce the settlement agreement (Docket # 106) is granted. Additionally, the Court approves the settlement agreement under Cheeks. Under that agreement, Rosario must pay Paulino the sum of $20,000 within 30 days of the date of this Opinion and Order.

Rosario may arrange to pay this sum though plaintiff's attorney, Mark Marino, and

should follow Mr. Marino's direction as to how the money should be transmitted. If so directed by Marino, Rosario should pay the money he owes Paulino by paying it to an escrow account in the name of Marino's firm, CSM Legal PC.

Because there is no just reason for delay in disposing of the claims against defendant Amantino Vega Rosario under Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk of the Court is hereby directed to enter judgment dismissing this case against defendant Amantino Vega Rosario on the ground that the parties have reached a settlement under which Rosario must pay plaintiff $20,000 within 30 days.

SO ORDERED.

Dated: July 7, 2025
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge