UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSE LUIS BELLO PAULINO,                          :

                    Plaintiff,          :          <u>OPINION AND ORDER</u>

              -v.-                            :
                                22 Civ. 8724 (GWG)
S & P MINI MARKET CORP. et al.,                   :

                  Defendants.          :
------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, United States Magistrate Judge:**

        Plaintiff Jose Luis Bello Paulino filed this action on October 13, 2022, raising claims against S & P Mini Market Corp. ("S & P Mini Market") and Amantino Vega Rosario under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 <u>et</u> <u>seq.</u>, and New York Labor Law §§ 190 <u>et</u> <u>seq.</u> and 650 <u>et</u> <u>seq.</u> ("NYLL"). <u>See</u> Complaint, filed October 13, 2022 (Docket # 1) ("Compl."). Defendant S & P Mini Market has defaulted and plaintiff Paulino now seeks a default judgment against it.[1] For the following reasons, plaintiff is awarded a judgment of $249,544.96 against S & P Mini Market plus prejudgment interest to be calculated by the Clerk of Court.

I.     <u>BACKGROUND</u>

    A.    <u>Procedural History</u>

        Paulino filed this action on October 13, 2022. <u>See</u> Compl. S & P Mini Market and Rosario were each served on December 8, 2022, and proofs of service as to both were filed on

---

[1] Notice of Motion, filed February 28, 2025 (Docket # 109); Declaration of Mark Marino, Esq. in Support of Plaintiff's Motion for Default Judgment, filed February 28, 2025 (Docket # 110) ("Marino Decl."); Damages Chart, filed February 28, 2025, annexed as Ex. 5 to Marino Decl. (Docket # 110-5) ("Damages Chart"); Proposed Default Judgment, filed February 28, 2025 (Docket # 111).

December 27, 2022.  <u>See</u> Affidavit of Service Through the Secretary of State, filed December 27, 2022 (Docket # 8); Affidavit of Service, filed December 27, 2022 (Docket # 9).  On March 15, 2023, S & P Mini Market and Rosario filed an answer, <u>see</u> Answer, filed March 15, 2023 (Docket # 32), and the case proceeded to be litigated.

On June 17, 2024, counsel for S & P Mini Market and Rosario moved to be relieved.  <u>See</u> Motion, filed June 17, 2024 (Docket # 56).  On June 18, 2024, the Court scheduled a conference to discuss the motion and ordered S & P Mini Market and Rosario to attend.  <u>See</u> Order, filed June 18, 2024 (Docket # 57), at 1.  In that Order, the Court warned S & P Mini Market and Rosario that "<u>if they fail to comply with this order, a default judgment may be entered against them and they may be subject to other sanctions</u>."  <u>Id.</u> at 2.  S & P Mini Market and Rosario failed to appear at the conference.  <u>See</u> Order, filed July 1, 2024 (Docket # 61).

Rosario attended a rescheduled conference on July 10, 2024, but no attorney appeared on behalf of S & P Mini Market.  <u>See</u> Order, filed July 10, 2024 (Docket # 62).  At that conference, Rosario stated that he would represent himself <u>pro se</u>.  <u>Id.</u>  On the same day, the Court ordered that "[b]ecause S & P Mini Market Corp. is now without counsel, it is deemed to be in default."  <u>Id.</u>; <u>see also</u> Order, filed January 16, 2025 (Docket # 98), at 1 ("S & P Mini Market Corp. remains a party in this case and is in default.").

On January 15, 2025, the Court began a jury trial of Paulino's claims against Rosario.  <u>See</u> Trial Transcript, dated January 15, 2025 (Docket # 99) (containing pages 1-100) & dated January 16, 2025 (Docket # 101) (containing pages 101-37).  As explained in an Opinion and Order issued on July 7, 2025, the claims against Rosario ultimately settled and have been dismissed.  <u>See</u> <u>Paulino v. S & P Mini Market Corp.</u>, 2025 WL 1860266, at *1 (S.D.N.Y. July 7, 2025).

On February 28, 2025, Paulino filed the instant motion for a default judgment against S & P Mini Market Corp. under Fed. R. Civ. P. 55(b)(2).  See Marino Decl.

B.     Factual Background

Defendant S & P Mini Market is a New York corporation owned by defendant Rosario. Compl. ¶¶ 3, 17.  S & P Mini Market and Rosario owned and operated a deli located at 270 E 165th St., Bronx, NY 10456 ("the Deli") "as a joint or unified enterprise."  Id. ¶¶ 3, 16.  "In each year from 2016 to 2021" defendant S & P Mini Market "had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)" and was engaged in interstate commerce.  Id. ¶¶ 27-28.

Plaintiff Paulino was employed by defendants at the Deli "from approximately 2012 until . . . about January 2021" as a "deli worker" or "deli man," handling, among other things, "food." Id. ¶¶ 4, 31-33.  Paulino's "work duties required neither discretion nor independent judgment." Id. ¶ 34.  Defendant S & P Mini Market "possessed substantial control over" Paulino's "working conditions," "had the power to hire and fire" Paulino, "controlled the terms and conditions of employment, and determined the rate and method of any compensation."  Id. ¶¶ 22, 26.

Paulino alleges that "[f]rom approximately October 2016 until on or about January 2021, [Paulino] worked from approximately 6:00 a.m. to 6:30 a.m. until on or about 4:00 p.m. to 6:00 p.m., 7 days a week."  Id. ¶ 36.  Paulino estimates that this "typically" amounted to "66.5 to 84 hours per week."  Id.  However, at another point in the complaint, Paulino partially contradicts this statement by alleging that "[f]rom approximately January 2020 until on or about January 2021, [Paulino] worked from approximately 6:00 a.m. to 6:30 a.m. until on or about 4:00 p.m. to 6:00 p.m., 6 days a week."  Id. ¶ 37.  Paulino estimates that this "typically" amounted to "57 to 72 hours per week."  Id.  Paulino was not granted "any breaks or meal periods of any kind."  Id.

¶ 42.

Plaintiff "was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked." Id. ¶ 43. Plaintiff also alleges that "Defendants' time keeping system did not reflect the actual hours that [he] worked." Id. ¶ 52.

"Throughout his employment, Defendants paid [Paulino] his wages in cash." Id. ¶ 38. Paulino alleges that "Defendants paid [him] a fixed salary of $85 per day" — a wage that "did not vary even when he was required to stay later or work a longer day than his usual schedule." Id. ¶¶ 39-40. For instance, defendants required Paulino "to work an additional 30 minutes to 1 hour before his scheduled departure time every day, and did not pay him for the additional time he worked." Id. ¶ 41. Paulino also alleges that defendants "habitually required [him] to work additional hours beyond his regular shifts but did not provide him with any additional compensation." Id. ¶ 51.

Plaintiff also alleges that "[o]n a number of occasions, Defendants required [him] to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay." Id. ¶ 44.

Plaintiff also alleges that defendants did not provide him, in English or in Spanish, with any notification "either in the form of posted notices or other means" "regarding overtime and wages"; "an accurate statement of wages"; "notice . . . of his rate of pay, employer's regular pay day," or other information required under Section 195(1) of the New York Labor Law. Id. ¶¶ 45-47, 85.

II.    LEGAL STANDARD

In light of S & P Mini Market's default, the complaint's properly pleaded allegations,

4

except those related to damages, are accepted as true.  See City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint.") (internal quotation marks and citation omitted); Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." (citation omitted)).

As to damages, "[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).  This inquiry requires the district court to: (1) "determin[e] the proper rule for calculating damages on . . . a claim" and (2) "assess[] plaintiff's evidence supporting the damages to be determined under this rule."  Id.

The plaintiff bears the burden of establishing his entitlement to the amount sought, see Dunn v. Advanced Credit Recovery Inc., 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012), adopted, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L., 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013) ("On an inquest for damages following a default, plaintiff bears the burden of proof and must introduce sufficient evidence to establish the amount of damages with reasonable certainty."), adopted, 2013 WL 4505255 (S.D.N.Y. Aug. 23, 2013), and "[t]he evidence the plaintiff submits must be admissible," Burns v. Scott, 635 F. Supp. 3d 258, 272 (S.D.N.Y. 2022).  "If the documents the plaintiff has submitted provide a 'sufficient basis from which to evaluate the fairness of' the requested damages, the Court need not conduct an evidentiary hearing."  Id. (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)); House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("[T]here must be a basis upon which the court may

establish damages with reasonable certainty.").

Paulino has proffered evidence of the hours he worked and the wages he received in the form of a sworn declaration.  See Declaration of Jose Luis Bello Paulino, filed February 28, 2025, annexed as Ex. 4 to Marino Decl. (Docket # 110-4) ("Paulino Decl.").  Paulino's sworn statements as to hours he worked and the wages he was paid "are presumed to be correct in the absence of any rebuttal evidence proffered by Defendants."  Rios v. Neighborhood Constr. Corp., 2009 WL 3335354, at *1 (S.D.N.Y. Oct. 14, 2009) (citation omitted).

In this case, the Court finds that a hearing is unnecessary inasmuch as Paulino's submissions have not been contested and they provide all the information required to determine Paulino's damages.

III.    DISCUSSION

Paulino brought suit under both the NYLL and the FLSA.  It is settled that while

> a plaintiff may be entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, he or she may not recover twice.  Instead, where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages.

Ergin v. 8th Hill Inc., 2022 WL 1037655, at *3 (S.D.N.Y. Apr. 6, 2022) (citation omitted), adopted, 2022 WL 1256996 (S.D.N.Y. Apr. 26, 2022).  Because the NYLL provides for the greater recovery in Paulino's case, it is not necessary to address any provisions of the FLSA.  See Caputi-Richards v. Chuck's Vintage, Inc., 2023 WL 2877622, at *2 (S.D.N.Y. Apr. 11, 2023), adopted, 2023 WL 3174316 (S.D.N.Y. May 1, 2023).

A.  Unpaid Minimum Wages

Paulino alleges minimum wage violations under the NYLL.  See Compl. ¶¶ 75-79.  Although Paulino cites to the New York regulation covering "large employers," see Marino Decl.

¶ 40 (referring to "[t]he New York Minimum wage rate for businesses with eleven or more employees in New York City"), Paulino has failed to plead or otherwise submit evidence addressing whether S & P Mini Market had eleven or more employees such that it could be considered a "large employer." N.Y. Lab. Law § 652(1)(a)(i). Accordingly, Paulino will be compensated at the rate for small employers in New York City. See N.Y. Lab. Law § 652(1)(a)(ii); Anzurez v. La Unica Caridad Inc., 2021 WL 2909521, at *4 (S.D.N.Y. July 12, 2021), adopted, 2021 WL 3173734 (S.D.N.Y. July 27, 2021); Maria v. Rouge Tomate Chelsea LLC, 2020 WL 6049893, at *4 (S.D.N.Y. Oct. 14, 2020), adopted, 2021 WL 734958 (S.D.N.Y. Feb. 25, 2021). This rate was "$10.50 per hour on and after December 31, 2016, $12.00 per hour on and after December 31, 2017, $13.50 per hour on and after December 31, 2018, [and] $15.00 per hour on and after December 31, 2019." N.Y. Lab. Law § 652(1)(a)(ii).

Paulino was paid daily, rather than hourly. See Paulino Decl. ¶ 16. Accordingly, the Court must calculate his hourly rate of pay to determine whether there was a minimum wage violation. See, e.g., Brathwaite v. Martini Collections Inc., 2025 WL 99108, at *3-4 (S.D.N.Y. Jan. 14, 2025) (calculating hourly rate of pay when plaintiff was paid daily), adopted, 2025 WL 448040 (S.D.N.Y. Feb. 10, 2025).

Under N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5(b), applicable to employees in the "hospitality industry,"[2]:

If an employer fails to pay an employee an hourly rate of pay, the employee's

---

[2] Because Paulino handled "food" in a "deli," Compl. ¶¶ 4, 33, the Deli qualifies as a "restaurant." The term "hospitality industry" includes a restaurant. N.Y. Comp. Codes, R. & Regs. tit. 12, § 146-3.1(a); see also Melo v. Milagro Grocery Corp., 750 F. Supp. 3d 38, 55 n.5 (E.D.N.Y. 2024) (finding that because plaintiff "worked behind the counter at the deli and as a food runner," he was "a hospitality industry employee" under the NYLL); Ramos v. Guaba Deli Grocery Corp, 2021 WL 5563714, at *9 n.9 (S.D.N.Y. Nov. 29, 2021) ("Given that Plaintiffs' responsibilities included food preparation, the Court concludes that . . . Plaintiffs were therefore hospitality industry employees." (citations omitted)).

regular hourly rate of pay shall be calculated by dividing the employee's total
weekly earnings, not including exclusions from the regular rate, by the lesser of
40 hours or the actual number of hours worked by that employee during the work
week.

From October 1, 2016, to December 31, 2019,[3] Paulino worked 7 days a week, earning

$85.00 each day.  Paulino Decl. ¶¶ 13, 16.  Thus, his weekly wage during this time period

amounts to $595.00 (7 * $85.00 = $595.00).  Paulino alleges that during this time he worked

"from sometime between 6:00 a.m. to 6:30 a.m. until sometime between 4:00 p.m. to 6:00 p.m."

amounting to "typically 66.5 to 84 hours per week."  Id. ¶ 13.  But Paulino has not provided any

evidence indicating how frequently he worked more than 66.5 hours per week or whether he did

so at all, despite that information being within his control.  Because Paulino bears the "burden of

proof" and "must introduce sufficient evidence to establish the amount of damages with

reasonable certainty," RGI Brands LLC, 2013 WL 1668206, at *6, we find, based on his

statement, that Paulino has established that he worked the lower end of the 66.5 to 84 hour range.

Thus, for the time period of October 1, 2016, to December 30, 2019, Paulino's hourly rate

is $595.00 divided by the lesser of 40 or 66.5.  See N.Y. Comp. Codes R. & Regs. tit. 12 § 146-

3.5(b).  This rate is $14.87 per hour ($595.00/40 hours = $14.87/hour).  $14.87 per hour is more

than the applicable minimum wage for the period of October 1, 2016, to December 30, 2019.

See N.Y. Lab. Law § 652(1)(a)(ii).

However, $14.87 per hour is less than the applicable minimum wage for December 31,

2019.  See id.  Accordingly, Paulino is awarded $0.74 ([$15.00 – $14.87] * 40 regular work

hours * 1/7 weeks = $0.74) for unpaid minimum wages for his regular hours on December 31,

---

[3]  Paulino's declaration speaks of a period lasting "until . . . January" and a subsequent
period starting in January.  Paulino Decl. ¶¶ 13-14.  Accordingly, we treat this period as ending
on December 31, 2019, and the subsequent period starting on January 1, 2020.

2019.

For the time period of January 1, 2020, to December 31, 2020,[4] Paulino worked 6 days a week, earning $85.00 each day.  Paulino Decl. ¶¶ 14, 16.[5]  Thus, his weekly wage during this time period amounts to $510.00 (6 * 85.00 = $510.00).  Paulino alleges that during this time he worked "from sometime between 6:00 a.m. to 6:30 a.m. until sometime between 4:00 p.m. to 6:00 p.m." amounting to "typically 57 to 72 hours per week."  Paulino Decl. ¶ 14.  For the same reasons stated above regarding the earlier time period, we find that Paulino has established that he worked the lower end of this range.  That is, Paulino has met his burden of proof that he worked 57 hours per week from January 1, 2020, to December 31, 2020.

Thus, for the time period of January 1, 2020, to December 31, 2020, Paulino's hourly rate is $510.00 divided by the lesser of 40 or 57.  See N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5(b).  This rate is $12.75 per hour ($510.00/40 hours = $12.75/hour), which is below the applicable minimum wage of $15.00/hour for December 31, 2019, onward.  See N.Y. Lab. Law § 652(1)(a)(ii).  Accordingly, Paulino is awarded $4,680.00 ([$15.00 – $12.75] * 40 regular work hours * 52 weeks = $4,680.00) for unpaid minimum wages for his regular hours during the time period of January 1, 2020, to December 31, 2020.

In sum, Paulino is entitled to $4,680.74 ($4,680.00 + $0.74 = $4,680.74) for unpaid

---

[4]  Paulino declares that he worked at S & P Mini Market "until . . . January 2021." Paulino Decl. ¶ 9.  Accordingly, Paulino has met his burden of proof until only the start of January 2021 and the Court will treat his employment as ending on December 31, 2020.

[5]  For this period, Paulino's declaration contains conflicting information.  Paulino declares that "[f]rom approximately October 2016 until on or about January 2021, I worked . . . 7 days a week (typically 66.5 to 84 hours per week)."  Id. ¶ 13.  Later, however, Paulino declares that "[f]rom approximately January 2020 until on or about January 2021, I worked . . . 6 days a week (typically 57 to 72 hours per week)."  Id. ¶ 14.  Given that the range of dates in the latter statement is a specific subset of the range of dates in the former statement, we assume that the former statement is in error.

minimum wage violations.

    B. <u>Unpaid Overtime Wages</u>

Paulino alleges overtime violations under the NYLL. <u>See</u> Compl. ¶¶ 80-83. The NYLL requires that an employee be paid an overtime rate not less than one-and-a-half times the employee's regular rate for hours worked in excess of 40 hours per work week. <u>See</u> N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.4. Where the employee has been paid below the minimum wage, "the appropriate overtime rate [is] one-and-a-half times the minimum wage rate." <u>Nana v. Le Viking LLC</u>, 2019 WL 3244181, at *3 (S.D.N.Y. July 19, 2019), <u>adopted</u> (Oct. 28, 2019). However, where the employee is paid at or above the applicable minimum wage, the appropriate overtime rate is one-and-a-half times the employee's regular rate. <u>See</u>, <u>e.g.</u>, <u>Ramos v. Guaba Deli Grocery Corp.</u>, 2021 WL 5563714, at *9 (S.D.N.Y. Nov. 29, 2021). As already noted, in instances where an employee is paid weekly rather than hourly, we compute the employee's "regular rate" by using the formula in N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5(b).

From October 1, 2016, to December 30, 2019, Paulino worked 66.5 hours per week. Paulino Decl. ¶ 13. Thus, during this time period, which spans 169 weeks and two days, Paulino worked a total of 4,486.07 overtime hours ([66.5 hours – 40 hours] * 169 weeks + [66.5 hours – 40 hours]/7 days * 2 days = 4,486.07 hours) for which he was not compensated. During this time period, Paulino's regular rate of $14.87 per hour was more than the applicable minimum wage. <u>See</u> N.Y. Lab. Law § 652(1)(a)(ii). Thus, Paulino's regular rate is used to calculate the total overtime pay for this time period. Accordingly, for this time period, Paulino is entitled to $100,061.79 ([$14.87/hour * 1.5] * 4,486.07 hours = $100,061.79).

On December 31, 2019, Paulino worked 3.79 overtime hours ([66.5 hours – 40 hours]/7 days * 1 day = 3.79 hours) for which he was not compensated.

From January 1, 2020, to December 31, 2020, Paulino worked 57 hours per week. Paulino Decl. ¶ 14. Thus, during this time period, which spans 52 weeks and 1 day, Paulino worked a total of 886.43 hours ([57 hours – 40 hours] * 52 weeks + [57 hours – 40 hours]/7 days * 1 day = 886.43 hours) for which he was not compensated.

During the time period from December 31, 2019, to December 31, 2020, Paulino's regular rate was less than the applicable minimum wage of $15.00 per hour. See N.Y. Lab. Law § 652(1)(a)(ii). Thus, the minimum wage is used to calculate the total overtime pay for this time period. Accordingly, for this time period, Paulino is entitled to $20,029.95 ([$15.00/hour * 1.5] * [886.43 hours + 3.79 hours] = $20,029.95).

In sum, Paulino is entitled to $120,091.74 ($20,029.95 + $100,061.79 = $120,091.74) in unpaid overtime.[6]

C. Spread of Hours

Paulino argues that he is "entitled to 'spread-of-hours' pay under the New York Hospitality Industry Wage Order." Marino Decl. ¶ 54.

Under the NYLL, an employee is entitled to an extra hour of pay at the minimum wage rate for any day on which "the spread of hours exceeds 10." N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6(a). "The spread of hours is the length of the interval between the beginning and end of an employee's workday." Id. § 146-1.6. "Effective as of January 1, 2011, the NYLL was amended such that the spread of hours regulations 'apply to all employees in restaurants and all-

---

[6] Paulino's calculation of minimum and overtime wages, as reflected in his damages chart, differs from ours for several reasons. Most obviously, while Paulino relies on the midpoint of his estimated range of hours worked, the Court uses the lower end for the reasons already described. Also, Paulino appears to calculate his regular rate of pay by dividing his wage by the total number of hours worked instead of the method set forth in N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5(b); Marino Decl. ¶ 43 (acknowledging that Section 146-3.5(b) applies to Paulino and employing the correct equation to calculate regular rate of pay).

year hotels, regardless of a given employee's regular rate of pay.'" Andrade v. 168 First Ave.
Rest. Ltd., 2016 WL 3141567, at *5 (S.D.N.Y. June 3, 2016) (quoting N.Y. Comp. Codes
R. & Regs. tit. 12 § 146-1.6(d)), adopted, 2016 WL 3948101 (S.D.N.Y. July 19, 2016).

Paulino's complaint does not raise a claim for unpaid spread of hours pay and does not
cite the relevant statutory code. See Compl. Thus, he is not entitled to a default judgment on
this claim.

Even if Paulino had raised a spread of hours claim, Paulino has not met his burden of
proof that he has worked more than ten hours a day for any time period. For the time period
October 1, 2016, to December 31, 2019, we have found that Paulino worked 66.5 hours in a 7-
day work week, see Paulino Decl. ¶ 13, but 66.5 hours divided by 7 days is only 9.5 hours per
day. For the time period of January 1, 2020, to December 31, 2020, we have found that Paulino
worked 57 hours in a 6-day work week, see id. ¶ 14, but 57 hours divided by 6 days is again only
9.5 hours per day.

Accordingly, Paulino is not entitled to damages for any unpaid spread of hours pay.

D. Payroll Notice and Wage Statement Violations

Paulino alleges that S & P Mini Market failed to provide payroll notices and wage
statements as required by NYLL §§ 195(1), (3). See Compl. ¶¶ 84-89. But the complaint does
not allege a "concrete downstream consequence" to Paulino of these failures and thus, for the
reasons described in Brathwaite, 2025 WL 99108, at *7-8, the Court lacks subject matter
jurisdiction over these claims and no damages can be awarded. See Hernandez v. 99 Thai
Playground LLC, 2022 WL 18539303, at *7 (S.D.N.Y. Nov. 28, 2022) (alleging only a statutory
violation of NYLL §§ 195(1), (3) is not sufficient to establish standing), adopted, 2023 WL
1400626 (S.D.N.Y. Jan. 31, 2023).

E.  Liquidated Damages

Paulino seeks liquidated damages for his unpaid wages.  See Compl. at 16.  The NYLL

allows employees to recover "an additional amount as liquidated damages equal to one hundred

percent of the total amount of the wages found to be due" unless the employer "proves a good

faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. Lab.

Law § 198(1-a).  S & P Mini Market has not responded to the motion for a default judgment and

there is no evidence in the record to suggest that it had a good faith basis to believe its

underpayment complied with the law.

Accordingly, Paulino is awarded 100% of his "unpaid wages."  See Villanueva v. 179

Third Ave. Rest Inc., 500 F. Supp. 3d 219, 239 (S.D.N.Y. 2020), adopted, 2021 WL 2139441

(S.D.N.Y. May 26, 2021); accord Cavalotti v. Daddyo's BBQ, Inc., 2018 WL 5456654, at *19

(E.D.N.Y. Sept. 8, 2018) (awarding 100% liquidated damages for "unpaid straight-time wages"

and "unpaid overtime compensation" under the NYLL).  As described above, Paulino is owed

$4,680.74 for unpaid minimum wages and $120,091.74 for unpaid overtime wages.[7]

Accordingly, Paulino is awarded $124,772.48 ($4,680.74 + $120,091.74 = $124,772.48) in

liquidated damages.

F.  Prejudgment Interest

Paulino seeks prejudgment interest.  See Compl. at 16; Marino Decl. ¶¶ 63-65.[8]  A

plaintiff who prevails on a NYLL wage claim is entitled to prejudgment interest on any

"underpayment" of wages.  See N.Y. Lab. Law § 198(1-a); Santana v. Latino Express Rests.,

---

[7]  Our figure differs from what is requested by Paulino not only for the reasons stated in footnote 6 above, but also because he calculates liquidated damages on his spread-of-hours claim and payroll notice and wage statement violations claim.

[8]  Post-judgment interest will accrue automatically under 28 U.S.C. § 1961.

<u>Inc.</u>, 198 F. Supp. 3d 285, 294-95 (S.D.N.Y. 2016); <u>Castillo v. RV Transp., Inc.</u>, 2016 WL

1417848, at *3-4 (S.D.N.Y. Apr. 11, 2016).  While "a plaintiff who receives FLSA liquidated

damages may not also receive pre-judgment interest[,] . . . liquidated damages under the NYLL

are considered punitive in nature, thus enabling a plaintiff to recover both liquidated damages

and pre-judgment interest."  <u>Villanueva</u>, 500 F. Supp. 3d at 243.  However, "the award of

prejudgment interest applies only to the amount of underpayment of wages, not the liquidated

damages."  <u>Salustio v. 106 Columbia Deli Corp.</u>, 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017).

Prejudgment interest in New York runs at the rate of nine percent per annum.  N.Y.

C.P.L.R. § 5004(a).  The starting date from which a court computes this interest is "the earliest

ascertainable date the cause of action existed."  <u>Conway v. Icahn & Co.</u>, 16 F.3d 504, 512 (2d

Cir. 1994) (quoting N.Y. C.P.L.R. § 5001(b)).  However, "[w]here . . . damages were incurred at

various times, interest shall be computed upon each item from the date it was incurred or upon

all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b); <u>see</u> <u>also</u>

<u>Marfia v. T.C. Ziraat Bankasi</u>, 147 F.3d 83, 91 (2d Cir. 1998) ("New York law leaves to the

discretion of the court the choice of whether to calculate prejudgment interest based upon the

date when damages were incurred or 'a single reasonable intermediate date.'" (citing <u>155 Henry</u>

<u>Owners Corp. v. Lovlyn Realty Co.</u>, 231 A.D.2d 559, 560-61 (2d Dep't 1996))).  Here, Paulino's

claims for unpaid wages arose on various dates between October 1, 2016, to December 31, 2020,

Paulino Decl. ¶¶ 13-14.  As is common in cases under the NYLL, <u>see</u>, <u>e.g.</u>, <u>Urena v. 0325 Tuta</u>

<u>Corp.</u>, 2022 WL 4284879, at *8 (S.D.N.Y. Sept. 16, 2022), <u>adopted</u>, 2022 WL 17249362

(S.D.N.Y. Nov. 28, 2022), we calculate prejudgment interest from the midpoint date of Paulino's

employment period: November 16, 2018.  Accordingly, Paulino is entitled to prejudgment

interest on his unpaid wage damages of $124,772.48 from November 16, 2018, until the date

judgment is entered.  This amounts to $30.77 per day ([$124,772.48 * 0.09] / 365 days =

$30.77/day).

      G.  <u>Attorney's Fees</u>

      Paulino has prevailed on his NYLL claims and is therefore entitled to seek an award of

reasonable attorney's fees.  <u>See</u> N.Y. Lab. Law § 663(4).  In this case, the original request for

attorney's fees suffered from two flaws, as the Court described in an Order.  <u>See</u> Order, filed June

10, 2025 (Docket # 120) ("June 10, 2025, Order").  First, the Court noted that it required a

"sworn declaration" and that no such declaration was in the record.  <u>Id.</u> at 1.  Second, the Court

noted that the request for fees

> does not disaggregate the attorney's fees and costs that were incurred as part of
> Paulino's claims against defendant S & P Mini Market Corp. from the attorney's fees
> and costs that were incurred as part of Paulino's claims against defendant Amantino
> Vega Rosario.  The failure to disaggregate is especially significant because the jury
> trial in this matter was solely against Rosario, not S & P Mini Market Corp.  No
> hours attributed to the trial should have been requested in the motion for a default
> judgment against S & P Mini Market Corp.
>
> An additional problem is that most of the remaining attorney's fees and costs were
> incurred as part of Paulino's prosecution of his claims against <u>both</u> Rosario and
> S & P Mini Market Corp.  But it is unclear why Paulino should be entitled to recover
> the full amount of these fees from defendant S & P Mini Market Corp. and the
> application for attorney's fees does not explain the basis for doing so.

<u>Id.</u>  The Order directed that "[i]f Paulino wishes to seek an award of attorney's fees and costs

against S & P Mini Market Corp., he shall, on or before June 18, 2025, make filings that correct

the errors noted in this Order."  <u>Id.</u>

      While plaintiff's counsel filed a document in response to the Order, <u>see</u> Declaration of

Mark Marino, Esq. in Support of Plaintiff's Motion for Default Judgment, filed June 11, 2025

(Docket # 121), it corrected only the first error.  There is nothing in the declaration that separates

out costs or fees attributable to the trial against Rosario and nothing that explains the basis for

seeking all costs and fees against S & P Mini Market Corp.  The Court's June 10, 2025, Order specifically warned that "[i]f filings are not made by June 18, 2025, that correct these errors, the plaintiff will be deemed to have waived any request for attorney's fees and costs against S & P Mini Market Corp. and the Court will proceed to adjudicate the motion for a default judgment insofar as it seeks any other form of relief."  June 10, 2025, Order at 1-2.

Because plaintiff has failed supply proper justification for his fees and costs, and because he failed to comply with the Court's Order, the Court awards no attorney's fees and costs.

\*       \*       \*

For the reasons stated above, Paulino is entitled to a judgment for:

$124,772.48 for unpaid wages

$124,772.48 for liquidated damages

Total: $249,544.96.

In addition, Paulino is awarded prejudgment interest at a rate of $30.77 per day from November 16, 2018, until the date judgment is entered.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, the motion for a default judgment (Docket # 109) is granted.

The Clerk of Court is directed to enter judgment against S & P Mini Market in favor of the

plaintiff in the amount of $249,544.96 plus an award of prejudgment interest to be calculated by

the Clerk of Court at $30.77 per day starting from November 16, 2018, until the date judgment is

entered.

Upon entry of the judgment, the Clerk shall close this case.

SO ORDERED.

Dated: July 15, 2025
       New York, New York


_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge